# UNITED STATES DISTRICT COURT
# FOR THE
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES,<br><br>v.<br><br>GUSTAVO KINRYS,<br><br>Defendant. | Case No. 20-CR-10307<br><br>ORAL ARGUMENT REQUESTED |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE RULE 404(b) EVIDENCE

Dr. Gustavo Kinrys is a Harvard-affiliated psychiatrist who provided psychotherapy and other psychiatric treatment to patients for approximately two decades. The government has charged Dr. Kinrys with wire fraud, health care fraud, and obstruction of justice. The charges are based on allegations that (1) between approximately January 2015 and December 2018, Dr. Kinrys billed insurance companies for psychotherapy and other psychiatric treatment that he did not actually provide, *see* Indictment at ¶ 4; and (2) in July and August 2018, Dr. Kinrys falsified patient records responsive to a subpoena *duces tecum* he received from the Department of Health and Human Services Office of the Inspector General ("HHS/OIG"), *see id.* at ¶¶ 56-60.

Exactly four weeks prior to the start of trial, the government served the defense with a Rule 404(b) notice advising that it intends to introduce at trial evidence that Dr. Kinrys underreported his taxable income on his 2015, 2016, and 2017 tax returns. *See* Exh. A (government's Rule 404(b) notice).[1] The government asserts in its Rule 404(b) notice that "Kinrys received [IRS Form 1099s]

---

[1] The government's Rule 404(b) notice also references evidence pertaining to Dr. Kinrys's homes in Wellesley and Nantucket, as well as his purchase of jewelry. The defense informed the government that it planned to object to the admission of that evidence. The parties were able to resolve their dispute after a meet-and-confer. Specifically, the parties have agreed that (1) the government will be entitled to admit evidence that, between 2016 and 2018, Dr. Kinrys paid off

from insurers concerning the [amount of reimbursement he received from each of the insurers] and then misrepresented those amounts in his [2015, 2016, and 2017] tax filings." *Id.* at 2. To prove that Dr. Kinrys committed these uncharged acts of tax evasion, the government intends to call the accountant at H&R Bloch who prepared Dr. Kinrys's tax returns. The accountant apparently would testify that she prepared the tax returns based on whatever 1099s Dr. Kinrys provided to her. The government intends to ask the jury to speculate that, to the extent the tax returns understated Dr. Kinrys's income, it was because Dr. Kinrys knowingly and willfully failed to provide the accountant with all of the 1099s that insurers issues (*i.e.*, that Dr. Kinrys committed tax evasion).

The government believes that Dr. Kinrys's supposed tax evasion is admissible to rebut Dr. Kinrys's defense that any inaccuracies in his insurance reimbursement claims were the result of administrative sloppiness, as opposed to knowing and willful fraud. For the reasons explained below, the government is wrong. The Court should preclude the government from introducing evidence relating to Dr. Kinrys's tax returns, both because the evidence is irrelevant and because the danger of unfair prejudice substantially outweighs whatever scant relevance it might have.

## APPLICABLE LAW

"The admissibility of Rule 404(b) evidence is considered in two steps: 'first, a court must determine whether the evidence in question has any special relevance exclusive of [the] defendant's character or propensity; and second, notwithstanding its special relevance, whether

---

the mortgage on his Wellesley home and purchased a vacation home in Nantucket with cash, but (2) the government shall refrain from introducing evidence that Dr. Kinrys transferred the Nantucket home to an irrevocable trust in December 2018 and made several purchases of expensive jewelry during and after the alleged fraud period, unless the defense somehow "opens the door" to such evidence. The parties were unable to reach a negotiated resolution, however, on the tax returns evidence.

the evidence [must be excluded under Rule 403 because the danger of unfair prejudice substantially outweighs its probative value].'" *United States v. Landrau-Lopez*, 444 F.3d 19, 23 (1st Cir. 2006) (quoting *United States v. Decicco*, 370 F.3d 206, 211 (1st Cir. 2004)). In assessing whether the evidence satisfies the "special relevance" prong of the Rule 404(b) test, a court must "focus[ ] on two factors: 'the remoteness in time of the other act and the degree of resemblance to the crime charged.'" *Landrau-Lopez*, 444 F.3d at 19 (quoting *Decicco*). The proponent of Rule 404(b) evidence must "clearly articulate how the evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed [the uncharged] offenses . . . , he therefore is more likely to have committed [the charged offenses]." *United States v. Morley*, 199 F.3d 129, 137 (3d Cir. 1999).

## ARGUMENT

It is inescapable that the jury would interpret evidence of Dr. Kinrys's alleged tax evasion as evidence that Dr. Kinrys has a propensity to commit financial crimes to enrich himself. No limiting instruction could meaningfully mitigate that risk. Any argument that the tax returns evidence merely goes to demonstrate "absence of mistake" or "lack of accident," Fed. R. Evid. 404(b)(2), is just unrealistic. Dr. Kinrys is not charged with tax evasion or making false tax-related representations to the IRS; he is charged with fraudulently billing insurance companies for medical services that he did not provide. The accuracy (or lack thereof) of Dr. Kinrys's tax returns has no logical bearing on the accuracy (or lack thereof) of his insurance reimbursement claims, nor does it have a logical bearing on whether any inaccuracies in his insurance reimbursement claims were the product of fraud. Aside from being financial crimes, there is no real similarity between tax evasion and submitting false insurance reimbursement claims—they involve different forms, different rules, different victims, and different acts. Thus, the government's Rule 404(b) argument

3

here ultimately reduces to the following simplification: if Dr. Kinrys knowingly and willfully falsified his tax returns, he must have committed insurance fraud too. This is precisely the type of propensity logic that Rule 404(b) prohibits. *Cf., e.g.*, *United States v. Ivins*, No. 09-cr-320, 2010 WL 1388999, at *3-4 (E.D. Pa. Mar. 31, 2010) (rejecting the prosecution's argument that the defendant's uncharged prior sexual relationship with a minor was probative to whether his later possession of child pornography, the offense with which he was charged, was the result of mistake or accident).

Federal courts have reversed convictions where evidence of uncharged tax evasion was improperly admitted. *See, e.g.*, *United States v. Martin*, 796 F.3d 1101, 1106 (9th Cir. 2015) (reversing convictions where "there [was] a substantial probability that the jury took [the] evidence [of uncharged evasion of state taxes] as proof that [the defendant] is a liar" and a tax "cheat"). Because evidence of uncharged tax evasion carries such a danger of unfair prejudice, courts tend to allow the government to introduce such evidence only in two circumstances: (1) where the defendant is charged with tax crimes similar in type and close in time to the uncharged alleged tax evasion, *see United States v. Daraio*, 445 F.3d 253, 264 (3d Cir. 2006) (collecting cases); and (2) where the jury's conclusion that the defendant engaged in the uncharged tax evasion would support a non-speculative inference that the defendant's wealth was generated through illicit charged conduct that he could not disclose on a tax return (*e.g.*, dealing cocaine)*, United States v. Cobbs*, 233 Fed. App'x 524, 538 (6th Cir. 2007) (collecting cases). Neither of those circumstances exists here. Dr. Kinrys is not charged with any tax crimes. And the government does not allege— nor could it plausibly allege—that Dr. Kinrys generated income through some sort of illicit cash business and needed to falsify his tax returns in order to conceal the illicit business's very existence. To the contrary, the government's Rule 404(b) notice itself acknowledges that all of

4

the money that Dr. Kinrys received from insurance companies—including the money that the government alleges Dr. Kinrys did not rightfully earn—was documented on 1099s that the insurance companies filed with the IRS.

If the government were allowed to inject uncharged tax evasion into its presentation to the jury, there certainly would be a mini-trial regarding whether Dr. Kinrys's tax returns were willfully inaccurate or only inadvertently so.[2] Dr. Kinrys's tax returns were prepared and completed by an accountant at a reputable firm. To establish that Dr. Kinrys engaged in tax evasion, the government would have to prove that Dr. Kinrys either willfully failed to provide the accountant with all of the 1099s he received from the insurance companies or somehow altered the 1099s to show a lower amount of income. This would require testimony from at least one prosecution witness—Dr. Kinrys's accountant—who otherwise would not be called at trial. And the defense would likely call one or more witnesses specifically to rebut the accountant's testimony on the wholly extrinsic tax issue. This is precisely the type of trial detour that Rule 404(b) is intended to prevent.

Allowing the government to introduce the tax evasion issue at trial would also implicate Dr. Kinrys's constitutional right to confront the witnesses against him. The insurance companies did not send the 1099s directly to Dr. Kinrys. The insurance companies sent the 1099s to the third-party billing company that Dr. Kinrys utilized, and the third-party billing company was responsible for mailing the 1099s to Dr. Kinrys's home. Whether the billing company competently discharged that responsibility is far from clear. The employee from the third-party billing company who could speak to the company's process of forwarding the 1099s to Dr. Kinrys is a woman named Yelena

---

[2] To be clear, the defense does not intend to argue at trial that Dr. Kinrys's tax returns are accurate representations of how much money he received from insurance companies during the relevant time period. In other words, the defense does not intend to make offensive use of Dr. Kinrys's tax returns.

5

Barin. For reasons known to the Court, Ms. Barin is unable to appear at trial and, for that reason, sat for a Rule 15 trial deposition on September 6th. At the time of Ms. Barin's deposition, the government had not yet notified the defense that the government intended to introduce the alleged uncharged tax evasion at trial. At the deposition, the government asked Ms. Barin some targeted questions regarding Dr. Kinrys's 1099s—the answers to which the government presumably intends to introduce in support of its uncharged tax evasion allegations. The defense did not cross examine Ms. Barin on the tax issue, because the defense lacked any notice that the issue was even potentially relevant. Ms. Barin is now practically unavailable to the defense for further cross examination. It would arguably be a violation of Dr. Kinrys's Fifth and Sixth Amendment rights for the government to introduce to the jury at trial uncharged tax evasion conduct when one of the key witnesses on the issue is now unavailable to the defense and testified at a Rule 15 deposition prior to the prosecution serving its Rule 404(b) notice.

## CONCLUSION

For the reasons set forth above, the Court should preclude the government from introducing its proffered Rule 404(b) evidence at trial.

DATED: September 21, 2023

Respectfully submitted,

*/s/ Aaron M. Katz*
Aaron Katz, Esq.
Keira G. Zirngibl, Esq.
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, MA 02116
(617) 915-6305
akatz@aaronkatzlaw.com

## CERTIFICATE OF SERVICE

I, Aaron M. Katz, hereby certify that the foregoing was served on counsel of record via the ECF system on September 21, 2023.

*Aaron M. Katz*